LONGDALE IRON CO. *v.* POMEROY IRON CO. *et al.*

(*Circuit Court, S. D. Ohio, W. D.* March 30, 1888.)

HUSBAND AND WIFE—WIFE'S SEPARATE ESTATE—CORPORATIONS—STOCKHOLD-
ERS.

Where stock is entered on the company's books by authority of a director in the name of his wife, he afterwards voting and representing the stock, and it does not appear that she authorized or subsequently ratified his acts, or received any dividends from, or claimed any interest in, the stock, it is error to charge her separate estate with the debts of the company to the amount of stock thus standing in her name.

In Equity. Exceptions to report of special master.
*Alfred Yaple* and *E. A. Guthrie,* for complainant.
*Lawrence Maxwell, Jr.,* for defendants.

JACKSON, J. On exceptions by Lawrence Maxwell, administrator of the estate of Julia A. Pomeroy, deceased, to the report of the special master, filed herein April 8, 1887, in and by which Mrs. Julia A. Pomeroy is found to be a stockholder in said Pomeroy Iron Company, and her estate charged accordingly. It appears from the record and report of the master that the Pomeroy Iron Company, a manufacturing corporation, incorporated under the laws of Ohio, became insolvent in 1878, and suspended business, leaving large debts outstanding and unsatisfied. This indebtedness having been generally reduced to judgments, and the creditors' remedies at law against the corporation being exhausted, the present bill was filed by the complainant on behalf of itself and all other creditors of the company seeking to hold the stockholders individually liable on their respective holdings of stock to the extent necessary to pay off the debts of the corporation, (stockholders being personally liable, by the laws of Ohio, in such cases, for the amount of their stock, if needed to discharge the debts of the company.) A reference was directed to a special master to report the indebtedness of the company, the names of its stockholders, and the several amounts of stock held and owned by them respectively, etc. The special master found and reported that Mrs. Julia A. Pomeroy was a stockholder in the company at the date of its failure to the amount of $8,300, which, with interest to April 1, 1887, made her estate liable for the sum of $12,443.07. To this finding and report of the special master the administrator of Mrs. Pomeroy's estate files exception, the general ground of his exception being that the proof does not establish the fact, which was disputed and controverted, that Mrs. Pomeroy was a stockholder as reported.

The evidence and report of the master disclose the following state of facts. On the stock ledger and transfer book of the company there is an entry under date of June 27, 1866, which purports to be a transfer by the company to Mrs. J. A. Pomeroy of 50 shares of its stock,—par value, $5,000. In January, 1867, a stock dividend of 115 per cent. was declared by the company, making an increase of 57½ shares, of the nom-

inal value of $5,750, to be placed upon the stock-books of the company to the credit of Mrs. J. A. Pomeroy. The capital stock of the company having been increased, there was entered up upon the stock-book of the company, under date of March 8, 1867, to Mrs. J. A. Pomeroy, as additional stock due her on said dividend and subscribed for by her, 125 shares, ($12,500.) In July, 1867, an additional stock dividend of 5 per cent. was declared, and eight shares ($800) of stock were then entered to the credit of Mrs. Pomeroy on the books of the company, making a total of 183 shares to her credit upon the books of the company on the 12th July, 1867. Under date of September 10, 1870, there is an entry on said books showing that 100 shares of the stock standing to Mrs. Pomeroy's credit was transferred to Arthur W. Pomeroy. John A. Pomeroy, the husband of Mrs. Julia A. Pomeroy, was a stockholder and director in said company, and it appears from the evidence taken under the reference that the 50 shares of stock placed to the credit of Mrs. J. A. Pomeroy in June, 1866, were transferred under the following circumstances: D. M. Sickler, the holder of said 50 shares, in April, 1866, sold the same to the company. While it held these shares, said J. A. Pomeroy bought them from the company, paid for them at his store, and they were thereupon transferred upon its books to J. A. Pomeroy. Afterwards the word "Mrs." was inserted before the name of "J. A. Pomeroy," so as to make the name stand, "Mrs. J. A. Pomeroy," instead of "J. A. Pomeroy," as originally entered. This was done by direction of John A. Pomeroy, who purchased the stock, and paid for it. It does not appear that Mrs. Pomeroy ever had any notice or knowledge of the transaction. The 115 per cent. on this stock was placed to her credit without her knowledge, or any direction from her, so far as shown by the evidence. This stock dividend, and the new subscription of 67½ shares, making 125 shares, ($12,500,) were placed to her credit by the direction of her husband, the said J. A. Pomeroy. The 100 shares of the stock standing in Mrs. Pomeroy's name, which was transferred to Arthur W. Pomeroy, was made at the instance and by the direction of said J. A. Pomeroy. This transfer upon the stock transfer book purports to have been made by the secretary of the company, Col. Cyrus Grant, as attorney for Mrs. J. A. Pomeroy. This power of attorney is not produced. Col. Grant does not know that it was in fact executed by Mrs. Pomeroy, or in any way authorized by her. The stock standing in Mrs. Pomeroy's name was always voted, represented, and controlled by her husband, J. A. Pomeroy, who directed the transfer of 100 shares thereof in September, 1870, to his brother, Arthur W. Pomeroy. No proxy or proxies from Mrs. Pomeroy to her husband to vote and to represent the stock standing in her name are produced. Proxies and power of attorney to vote and transfer stock were filed in the vaults of the company, and the secretary thinks that they can be found there. Mrs. Pomeroy's signature was not known to the secretary, and when the husband produced a proxy purporting to be signed by her, (if such proxies were offered,) that was deemed sufficient to authorize him to vote and represent the stock standing in her name. It is not shown that Mrs. Pome-

v.34F.no.6—29

roy's husband was her agent in respect to these or other transactions. Nor does it appear that he had the management of her separate estate, or was intrusted with the investment of her private means. It does not appear that he had any authority to take stock of the company in her name, or that she was ever informed that he had done so. In July or August, 1877, the book-keeper of the company called upon her at her home, in the presence of her husband, with a request to indorse notes of the company. This she declined to do, the book-keeper thinks, though he is not certain of it; that he then said to her that her name was on the books for $8,000 of the stock. She neither admitted nor denied the statement, if it was made, but declined to indorse the notes of the company. It does not appear that she ever accepted any dividends in cash or stock from the company, or exercised any control over the stock, or asserted any right, title, or interest in and to the same. She died since the institution of this suit, before her testimony was taken. Her administrator has found no certificates of stock in the company among her papers. Her husband, J. A. Pomeroy, died insolvent before the institution of the present suit.

Under these circumstances, can Mrs. Pomeroy be held as a stockholder in the company, and her estate be subjected to the liability arising from that relation? In *Turnbull* v. *Payson*, 95 U. S. 418, it is held by the supreme court, that "when the name of an individual appears on the stock-book of a corporation as a stockholder, the *prima facie* presumption is that he is the owner of the stock, in a case where there is nothing to rebut that presumption; and in an action against him as a stockholder, the burden of proving that he is not a stockholder, or of rebutting that presumption, is cast upon the defendant," citing numerous authorities. In that case it appeared that the defendant had signed a receipt for a dividend on the stock standing in his name, which was of itself sufficient to show acceptance on his part. But aside from that circumstance, under the authority of that decision, if nothing more appeared in the case, then the fact that Mrs. Pomeroy's name stood upon the books of the company as stockholder, she and her estate would be liable as such. But in explanation of how her name came to be placed upon the books of the company, the secretary of the company, as the proper officer having the custody of said books, has disclosed a state of facts which, in the opinion of the court, negative the *prima facie* presumption arising from her name being found upon the books as a stockholder. When it was developed that her husband had placed her name there, then it became necessary to show that she had either authorized his action, or had subsequently ratified and adopted it. The evidence does not establish either of these facts. There is no presumption of law or of fact that J. A. Pomeroy, the husband, was the agent of his wife, invested with authority to take stock in her name; and when it was shown that the stock was taken or placed in her name by his authority or direction, it became necessary, in order to bind her, to assume that he was authorized so to act for and on her behalf. This presumption cannot be indulged. There is nothing in the relationship of the parties to warrant such an in-

ference.　In respect to her separate estate now sought to be bound by the husband's acts, the wife must be treated and stand upon the same footing as an entire stranger.　It may be that the husband and company would both be estopped from disputing Mrs. Pomeroy's ownership of the stock placed in her name under the circumstances above stated, but until she does some acts signifying her acceptance of the same, she is not to be regarded as the owner of the stock, and subject to the liabilities thence arising in favor of creditors.　The decision in *Turnbull* v. *Payson*, 95 U. S. 418, is distinguishable from, and does not control the present case.　It would be an unwarrantable extension of the doctrine there announced to apply it here.　The true principle applicable to the facts of this case is stated in Low. Tr. Stocks, § 81, note 1, and cases cited, as follows:

"Although the books of the corporation are not conclusive evidence of title, yet they declare that the persons whose names appear in them do in fact own the stock as therein stated.　Any one, therefore, who makes such statement, by causing a record to be made in the books of the corporation, may be estopped to deny that the statement is true, if the denial would injure a person who has been misled by the record in the books.　A false representation of this kind is made by any one who allows his name to be entered on the books for stock that does not belong to him, or by one who causes another person to be recorded as the owner of stock which belongs in fact to himself. In those cases the entry on the books has no effect in the actual passing of the legal title, but on account of the misconduct of the person who makes the false record, an estoppel arises in favor of the injured party, who may avail himself of it or not, at his option.　The party injured is not bound by the statement in the books, but he has a right to insist that the person who caused the entries to be made shall not be heard to say that they are wrong. It is, of course, essential that the false entry should have been made with the consent of the person against whom estoppel avails; for it is clear that an entry in the books can create no right against a person who never knew that the entry was made."

Taken as a whole, the evidence in this case is not sufficient to sustain the finding that Mrs. Julia A. Pomeroy was a stockholder in the Pomeroy Iron Company, as reported by the special master.　The exception of her administrator to the report is sustained, and a decree may be entered discharging her estate from liability on that account, and dismissing the bill as to her administrator with costs.　In all other respects the report of the special master is confirmed, and proper decree will be made in the case for collection of the amounts reported as due from the several stockholders, and for distribution of the same among the creditors of the company, whose claims have been allowed.　The counsel for complainant will be allowed a reasonable and proper fee for representing the interests and asserting the rights of the parties entitled to the funds to be collected, and a reference is directed to the special master to ascertain and report upon such allowance.